THE UNITED STATES, PLAINTIFFS IN ERROR V. THE SHIP GARONNE,
WILLIAM SKIDDY AND OTHERS, CLAIMANTS.

THE UNITED STATES, PLAINTIFFS IN ERROR V. THE SHIP FORTUNE,
VASSE MANUEL, CLAIMANT.

Certain persons, who were slaves in the state of Louisiana, were by their owners
taken to France as servants; and after some time, were by their own consent sent
back to New Orleans; some of them under declarations from their proprietors that
they should be free; and one of them, after her arrival, was held as a slave.  The
ships in which these persons were passengers, were, after arrival in New Orleans,
libelled for alleged breaches of the act of congress of April 20th, 1818, prohibiting
the importation of slaves into the United States.  Held, that the provisions of the
act of congress do not apply to such cases.  The object of the law was to put an
end to the slave trade, and to prevent the introduction of slaves from foreign
countries.  The language of the statute cannot properly be applied to persons of
colour who were domiciled in the United States; and who are brought back to their
place of residence, after their temporary absence.

APPEALS from the eastern district of Louisiana.

The French ship Garonne, from Havre, and the ship Fortune,
also from Havre, were libelled by several proceedings by the United
States, at New Orleans, in the district court of the United States,
January, 1836, under the provisions of the first section of the act of
congress, passed April 20, 1818, entitled " an act, in addition to an
act, to prohibit the introduction of slaves into any port or place,
within the jurisdiction of the United States, from and after the first
day of January, 1808, and to repeal certain parts of the same."

The ship Garonne had arrived in New Orleans about the 21st of
November, 1835; having on board a female, Priscilla, who had been
born a slave in Louisiana, the property of the widow Smith, a native
of that state, and resident in New Orleans.  Mrs. Smith and her daugh-
ter being in ill health, went from New Orleans with her family, in
1835, to Havre, taking with her, as a servant, Priscilla; having pre-
viously obtained from the mayor of the city a passport for the slave,
to prove that she had been carried out of the state, and that she
should again be admitted into the same.  Priscilla being desirous of
returning to New Orleans, from Paris, was sent back on board the

VOL. XI.—K

[United States v. Skiddy.]

Garonne, under a passport from the charge des affaires of the United States, in which she was described as a woman of colour; the servant of a citizen of the United States. On the arrival of the ship, the baggage of the girl was regularly returned as that of the slave of Mrs. Smith.

The facts of the case of the ship Fortune were as follow: Mr. Pecquet, a citizen of New Orleans, went to France in 1831, taking with him two servants, who were his slaves; as was alleged in the testimony, with an intention to emancipate them. They remained with the family of Mr. Pecquet, in France, for some time, and returned to New Orleans at their own instance, in the ship Fortune, in 1835, as was asserted, as free persons. The passport of the American legation, represented these females as domestics of Mr. Pecquet, of New Orleans, a citizen of the United States. After their return to New Orleans, it did not appear that they were claimed or held by the agent of Mr. Pecquet, or by any person, as slaves; but no deed of emancipation for either of them had been executed. On the arrival of the Fortune, in the list of passengers which was certified under the oath of the captain, these persons, by name, were stated to be the slaves of Mr. Pecquet. The declarations of Mr. Pecquet that these persons were brought back as free, and that it was his intention that they should be free, were in evidence.

The district court of Louisiana dismissed both the libels, and the United States prosecuted these appeals.

The case was argued by Mr. Butler, attorney-general, for the United States; and by Mr. Jones, for the defendants.

Mr. Butler stated, that in the case of the Garonne the question was presented whether a slave who had been carried out of the United States by a master, could be afterwards brought back to the United States.

The words of the statute are, that " it shall not be lawful to import or bring, in any manner whatsoever, into the United States," &c., " any negro, mulatto, or person of colour," with intent to hold, sell, or dispose of " such persons as a slave, or to be held to service or labour."

It is not claimed that the United States have, under the constitutional power " to regulate commerce," a right to interfere with the

regulations of states as to slaves.    The powers of congress apply to foreign commerce.

The words of the statute are, " import" or " bring," and the case stated in the proceedings is fairly within the law.    The persons were brought into the state of Louisiana as slaves, and are here held as such.    If the words of the statute comprehend the case, the Court will apply them; and they will not be restrained from doing so by the supposition that the case to which they apply was not intended by congress.

In the case of the ship Fortune, the attorney-general argued, that there was error in the decree of the district judge in dismissing the libel of the United States, on the ground that as the persons of colour brought into New Orleans were free, the act of congress was not violated.    This was not the issue.    The allegation on the part of the United States is, and the evidence establishes that persons of colour were brought into the United States by the ship Fortune, and that they were to be held to service or labour, either as slaves or otherwise.    In either case the law is broken, and the penalties are incurred by the ship.

It is not necessary to show that the persons were held as slaves after their arrival in New Orleans.    Were they brought into the United States as slaves?    This is established by the list of passengers sworn to by the captain of the ship.    After naming them, he states, "these two negresses are slaves of Mr. Pecquet, and are sent to New Orleans by their master."    In the United States v. Gooding, 12 Wheat. 460; 6 Cond. Rep. 572; it was decided that the declarations of the master of a ship in the transactions of the vessel, being a part of the res gestæ, are competent evidence of the voyage.    The declaration of the master in this case was in the course of his duty.    If the persons were brought to the United States, not as slaves, but to be held to service or labour, the case is the same.

If the construction given by the district court of Louisiana is maintained, the act of 1807, to which this is a supplement, will be defeated.    The objects and purposes of that law were to prevent any persons of colour being brought into the United States, to be held to service or labour.    If evidence of intention is to acquit, the law will be null.    The question is whether not having made the persons brought in the vessel free, the intention only to emancipate them will operate to defeat the law.    Suppose the intention of the owner, or his instructions to his agent not carried into effect, how would the

[United States v. Skiddy.]

case stand?    Could not the persons have been sold as slaves after
their arrival?    Would the intention to emancipate them give a
substantial claim to freedom?

Congress had power to pass this law.    They may have thought
that if an owner of slaves carried them to a foreign country, he
ought not to be allowed to bring them back.

Mr. Jones, for the claimants of the Garonne, and for the claimants
of the Fortune.

The government of the United States has no right to interfere
with the property of the owners of slaves; nor was it the object of
the law on which these proceedings are founded, to do so.    The per-
sons who were brought in the Garonne, were slaves in Paris; and
when they returned, they came to a domicile they had never lost.
Sojourning in France, did not deprive them of their domicile.    The
case may be illustrated by supposing a Maryland gentleman shall
take his slave with him when travelling, into Virginia.    He could
not, according to the principles contended for by the United States,
bring him back.    But this is a misconception of the law.    It was
intended to apply to persons brought from foreign countries, and
who were so imported for the purpose of their being slaves.    Its
whole application is to the slave trade.    To prohibit the return of
slaves from a foreign country, to which they may have accompanied
their owners, is a direct interference with the rights of those owners;
and is against the constitution of the United States.

But if these views of the case left it in any doubt, the whole of
the case of the Fortune shows that the persons of colour brought
from Havre, were free.    They had been discharged from slavery by
their master, and were entitled to be emancipated.    In a court of
equity, their claim to freedom could have been substantiated.    All
the facts of the case, exclude the supposition that they were to be
held to service or labour.

Mr. Chief Justice TANEY delivered the opinion of the Court.

These two cases are appeals from decrees of the district court for
the eastern district of Louisiana, upon libels filed by the district
attorney, against these said ships, their tackle, apparel, and furniture;
for alleged breaches of the act of congress of April 20, 1818, (vol. 6.
325) prohibiting the importation of slaves into the United States.

In the case of the ship Garonne, the facts were admitted by the

[United States v. Skiddy.]

parties in the court below, and are in substance, as follow: Priscilla, a person of colour, born in Louisiana, was a slave; the property of the widow Smith, who was a native of the same state. Mrs. Smith, and her daughter, Madame Couchain, being in an ill state of health, left New Orleans with her family for France, in 1835, taking with her as a servant, the abovementioned girl. Priscilla being desirous of returning to New Orleans, Mr. Couchain, the son-in-law of Mrs. Smith, through the intervention of a friend, procured for her a passage in the ship Garonne from Havre to New Orleans; and since her arrival at that place, she has lived at the house of Mrs. Smith, and is held as her slave.

Upon this statement of facts, the question is presented whether Mrs. Smith, a resident of Louisiana, going abroad, and sojourning for a time in a foreign country, and taking with her one of her slaves as an attendant, may lawfully bring, or send her back to her home, with intent to hold her as before in her service. It does not appear from the evidence, or admissions in the case, whether the laws of France gave the girl a right to her freedom upon her introduction into that country. But this omission is not material to the decision. For even assuming that by the French law she was entitled to freedom, the Court is of opinion that there is nothing in the act of congress under which these proceedings were had, to prevent her mistress from bringing, or sending her back to her place of residence; and continuing to hold her as before, in her service.

The object of the law in question was to put an end to the slave trade; and to prevent the introduction of slaves into the United States, from other countries. The libel in this case was filed under the first section of the act, which declares, "that it shall not be lawful to import or bring in any manner into the United States or territories thereof, from any foreign kingdom, place, or country, any negro, mulatto, or person of colour, with intent to hold, sell, or dispose of such negro, mulatto, or person of colour, as a slave, or to be held to service or labour;" and then proceeds to make the vessel liable to forfeiture, which shall be employed in such importation. The language of the law above recited, is obviously pointed against the introduction of negroes or mulattoes who were inhabitants of foreign countries, and cannot properly be applied to persons of colour who are domiciled in the United States, and who are brought back to their place of residence, after a temporary absence. In the case before the Court, although the girl had been staying for a time in

[United States v. Skiddy.]

France, in the service of her mistress; yet in construction of law, she continued an inhabitant of Louisiana, and her return home in the manner stated in the record, was not the importation of a slave into the United States; and consequently, does not subject the vessel to forfeiture.

If the construction we have given to this section of the law needed confirmation, it will be found in the exception contained in the fourth section of the law in relation to persons of colour, who are " inhabitants, or held to service by the laws of either of the states or territories of the United States." This section prohibits our own citizens, and all other persons resident in the United States, from taking on board of any vessel, or transporting from any foreign country or place, any negro or mulatto, " not being an inhabitant, nor held to service by the laws of either of the states or territories of the United States." Under this section, the mere act of taking or receiving on board, the coloured person, in a foreign country, with the intent to sell, or hold such person in slavery, constitutes the offence. But inasmuch as Priscilla was an inhabitant of New Orleans, and held to service by the laws of Louisiana, if the captain of an American vessel had taken her on board at Havre, for the purpose of transporting her to Louisiana, there to be held in slavery, it is very clear that by reason of the exception abovementioned, the act of receiving her in his vessel for such a purpose, would have been no offence; while the taking on board of a negro or mulatto, who was the inhabitant of any other country, would have been a high misdemeanor, and subjected the party to severe punishment, and the vessel to forfeiture. It would be difficult to assign a reason for this discrimination, if the persons of colour described in the exception, could not be brought to this country without subjecting the vessel to forfeiture; and the exception made in this section, in relation to those who are inhabitants, or held to service by the laws of either of the states or territories of the United States, proves that congress did not intend to interfere with persons of that description, nor to prohibit our vessels from transporting them from foreign countries back to the United States.

The principles above stated decide also the case of the United States v. the ship Fortune. We think there is enough in the record to show that the persons of colour therein mentioned, were sent to New Orleans, the place of their residence, for the purpose of being there manumitted, and not to be held in slavery. But it is unneces-

sary to go into an examination of the evidence on this point; because in either case, the bringing them home was not an offence against the act of congress, and the vessel in which they returned is not, on that account, liable to seizure and condemnation.

The decree of the district court must therefore be affirmed, in each of these cases.


These causes came on to be heard on the transcripts of the record from the district court of the United States for the eastern district of Louisiana, and were argued by counsel. On consideration whereof, it is now here ordered and decreed by this Court, that the decree of the said district court, in each of the causes be, and the same is hereby affirmed.