## Arsene *v.* Pigneguy.

A slave voluntarily taken by her owner to a country in which slavery is prohibited, and there kept in his service for two years, will be thereby emancipated. The fact of the master's not having acquired a domicil in the country to which the slave was removed, will not prevent her emancipation. *Per Curiam:* The personal condition of those thrown on foreign coasts by shipwreck, or taking refuge from pirates, or driven by some overwhelming

*Slidell, J., having been of counsel, did not sit in this case.

necessity, or perhaps those passing through a foreign territory on a lawful journey, may remain unchanged; but this is the extent to which an immunity from the foreign law can be maintained under the law of nations.

ARSENE<br>v.<br>PIGNEGUY.

One who succeeds in establishing her right to freedom against a person by whom she is held in slavery, will be entitled to recover wages from judicial demand.

APPEAL from the First District Court of New Orleans, *McHenry*, J. *David*, for the plaintiff. *Roselius*, for the appellant. The judgment of the court was pronounced by

EUSTIS, C. J. The plaintiff claims her freedom on the ground that, being the slave of the defendant, *L. A. Pinéguy*, she was taken from New Orleans, the domicil of her master, to France, where she remained in the service of his family for the space of two years, in 1836, 1837, and 1838, and afterwards returned to New Orleans.

In the cases which we have had before us of slaves claiming their freedom by reason of having been taken to places where the condition of slavery did not exist, the owners had acquired a domicil in those places, and there was no question as to the operation and effect of the laws there upon the *status*, or personal condition, of the parties. See *Josephine* v. *Poultney*, 1 Annual Rep. 329. *Eugenie* v. *Préval et al.*, ante 180. It is contended that this case does not come within the principle of those cases, inasmuch as the defendant acquired no domicil in France, as his absence from Louisiana was but temporary, where his property remained and his business continued, and he never lost his original residence.

We consider that the jurisprudence of this State has settled this question, which has been more than once the subject of discussion. We cannot expect that foreign nations will consent to the suspension of the operation of their fundamental laws, as to persons voluntarily sojourning within their jurisdiction for such a length of time. As to those thrown on foreign coasts by shipwreck, taking refuge from pirates, driven by some overwhelming necessity, or perhaps those passing through a foreign territory on a lawful journey, their personal condition may remain unchanged; but this is the extent to which an immunity from the effect of the foreign law could be maintained under the laws of nations. *Marie Louise* v. *Marot*, 9 La. 474. *Priscilla* v. *Smith*, 13 La. 444. Story, Conflict of Laws, § 96 *et seq.* 2 Kent's Com. p. 458, s. 39. We have met with no case in which a contrary doctrine is held. The case of the *United States* v. *The Garonne*, is supposed to support it; but an examination of it will satisfy any one, that the decision in that case does not reach that under consideration. *Vide* 11 Peters, 73. In the case of the slave *Grace*, 2 Haggard's Rep. 94, she had not been taken out of the realm, but from one of the islands to England, within the same imperial jurisdiction.

The plaintiff became free by remaining two years in France, and her former master ceased to have authority or dominion over her.

We think the plaintiff is entitled to wages from the judicial demand.

The judgment of the District Court releasing the plaintiff from the dominion of the defendant is therefore affirmed; and it is further ordered, that the plaintiff recover from the defendant, *L. A. Pignéguy*, the sum of $8 per month from the 5th of November, 1846, with costs in both courts.